IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

**NEFTALI SOTO PADRO,**
    **Plaintiff,**

    v.

**PUBLIC BUILDING AUTHORITY, et al.,**
    **Defendants.**

**Civil No. 08-2175 (GAG)**

**OPINION AND ORDER**

    Plaintiff, Neftali Soto Padro ("Plaintiff"), commenced this action against the Puerto Rico Public Building Authority ("PBA") and various employees of the PBA (collectively, "Defendants") in their official and personal capacities for alleged acts of political discrimination. Plaintiff seeks declaratory and injunctive relief as well as damages resulting from these acts of alleged discrimination, pursuant to the First and Fourteenth Amendments to the U.S. Constitution; 42 U.S.C. Section 1983; and 28 U.S.C. Sections 2201-2202; P.R. Laws Ann. tit. 3, Sections 1301 et seq.; and Article 1802 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31, Section 5141.

    Presently before the court are two motions for summary judgment (Docket Nos. 62 & 64) filed by the PBA as well as Defendants in their official and individual capacities, respectively. Plaintiff timely opposed these motions (Docket Nos. 97 & 98). By leave of the court, Defendant filed a reply brief (Docket No. 102) which Plaintiff opposed by sur-reply (Docket No. 112). After reviewing these submissions and the pertinent law, the court **GRANTS in part and DENIES in part**[1] Defendants' motion at Docket No. 62 and **GRANTS** Defendants' motion at Docket No. 64.

---

[1] Although the court denies Defendants motion for summary judgment on the issue of Eleventh Amendment immunity, Plaintiff's Section 1983 and due process claims are unable to survive summary judgment on the merits. Therefore, although Defendant's first summary judgment motion (Docket No. 62) is denied in part, all of Plaintiff's claims are nonetheless dismissed on the other grounds adduced in Defendants' motions for summary judgment.

**Civil No. 08-2175 (GAG)**                                       2

### I.      Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case.  The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

### II.     Relevant Factual & Procedural Background

Plaintiff is an active member of the New Progressive Party ("NPP"). Plaintiff began working for the PBA in February 1996 in a trust position as the Regional Director of the Mayaguez Region.

**Civil No. 08-2175 (GAG)**                                                3

On March 1, 2000, Plaintiff received a letter indicating that, effective February 29, 2000, he would no longer be a Regional Director and would undergo a probationary period in a new career position. Plaintiff occupied this career position of Field Operations Supervisor in the Aguadilla Region from February 2000 until August 2008. On or around 2003 to 2004, two additional positions of Supervisor of Field Operations were created at the PBA Aguadilla Region. These two positions were filled by Adrian Acevedo and Jose Vargas, both of whom, Plaintiff alleges, are members of the Popular Democratic Party ("PDP"). Plaintiff contends that Jose Vargas did not qualify for the position of Supervisor of Field Operations at the time he was appointed.

In 2007, there was a structural reorganization across the entire PBA, which was approved by the PBA Board of Directors. This reorganization of 2007, eliminated several positions and created new positions. Following the elimination of his position, Plaintiff applied for three career positions at the PBA: Auxiliary Regional Director; Field Operations Manager; and Technical Services Supervisor. On September 13, 2007, Plaintiff received a letter from Executive Director Leila Hernandez Umpierre informing Plaintiff that he was chosen for the position of Technical Services Supervisor. In response, Plaintiff sent a letter to Hernandez voicing his contention that selecting him for said position without considering or interviewing him for the position of Field Operations Manager or for Auxiliary Regional Director constituted acts of political discrimination. He alleged that Defendants engaged in said acts because of his affiliation with the NPP. He further stated that the job designation represented a demotion in pay scale and supervisory functions.

On November 2, 2007, Rudy Martinez Calderon, Director of Human Resources, wrote a letter to Plaintiff informing him that his placement in the position of Technical Services Supervisor did not go into effect and that he would remain in his position of Field Operations Supervisor for the Aguadilla Region. Plaintiff remained in this position for an additional eight months. On July 3, 2008, Hernandez wrote another letter to Plaintiff, stating that as a result of the 2007 reorganization, his position of Field Operations Supervisor will be reclassified as Technical Services Supervisor. This reclassification did not affect Plaintiff's salary, but altered his salary scale and

**Civil No. 08-2175 (GAG)**                             4

duties as a supervisor. Plaintiff contends that, during the reorganization period, the PBA failed to follow its own hiring and probationary procedures when hiring a new Field Operations Manager. He further alleges that these failures to comply demonstrate that Defendants' actions were motivated by political animus.

On or around February 2008, Plaintiff was named Regional Director of the PBA's Mayaguez Region, which is a trust position. As Regional Director, Plaintiff is no longer supervised by any of the individual defendants in this case.

**III.    Discussion**

**A.    Summary Judgment Motion for Claims Against PBA and Defendants in Their Official Capacities (Docket No. 62)**

Plaintiff's summary judgment motion at Docket No. 62 deals exclusively with the charges brought against the PBA and its individual members in their official capacity. Plaintiff requests a declaratory judgment, injunctive relief, and monetary damages for the alleged actions taken by the PBA and the individual defendants in their official capacities.

**1.    Eleventh Amendment Immunity**

The Eleventh Amendment to the U.S. Constitution establishes that, without their express consent, or the explicit abrogation of the immunity by Congress, states cannot be sued for damages in federal courts. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99 (1984); Fitzpatrick v. Bitzer, 427 U.S. 445, 451-52 (1976). This immunity extends to the Commonweatlh of Puerto Rico, its instrumentalities, and government officials acting in that capacity. See Pastrana-Torres v. Corporacion de P.R. para la Difusion Publica, 460 F.3d 124 (1st Cir. 2006); Maysonet-Robles v. Cabrero, 323 F.3d 43 (1st Cir. 2003). The Eleventh Amendment seeks to protect a state's interest in its public treasury and its dignity as a sovereign. See Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. & Caribbean Cardiovascular Ctr. Corp., 322 F.3d 56, 63 (1st Cir. 2003).

Supreme Court jurisprudence holds that an entity must either be the state or an "arm of the state" to fall under the umbrella of Eleventh Amendment immunity. See N. Ins. Co. of N.Y. v.

**Civil No. 08-2175 (GAG)**                                                5

Chatham County, 547 U.S. 189, 193 (2006); Alden v. Maine, 527 U.S. 706, 756 (1999); Mt. Healthy City Bd. of Ed. v. Doyle, 429 U.S. 274, 280 (1977). Following this precedent, the First Circuit has developed a two-part test to determine whether a particular entity qualifies as an "arm of the state." Fresenius, 322 F.3d 56, 64-68 (1st Cir. 2003). Under the first part of the test, the court must determine "whether the state has structured the entity to share its Eleventh Amendment immunity." Pastrana-Torres, 460 F.3d at 126 (citing Fresenius, 322 F.3d at 68). "While this inquiry is without doubt a question of federal law, 'that federal question can be answered only after considering the provisions of state law that define the agency's character.'" Redondo Const. Corp. v. P.R. Highway & Transp. Auth., 357 F.3d 124, 127 (1st Cir. 2004) (quoting Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 n.5 (1997)). However, when these indicia are inconclusive to demonstrate that the legislature has intended that the entity have immunity, "the second part of the test focuses on the risk that money damages will be paid from the state's treasury if the entity is found liable." Id. If the Commonwealth has obligated itself to pay the entity's debts then the entity is entitled to Eleventh Amendment immunity. Id.

Defendants aver that the PBA is an "arm of the state" and therefore is immune to suit under the Eleventh Amendment. In Iravedra v. Pub. Bldg. Auth., 196 F. Supp. 2d 104 (D.P.R. 2002), this court held that, based on all of the relevant indicia, the PBA was not an "arm of the state," and therefore was subject to suit in federal court. Defendants contend that because the Iravedra decision predates the First Circuit's analysis in Fresenius, this ruling should have no persuasive effect upon this court's decision. Defendants also point to purported fundamental amendments to the PBA enabling statute in 2006 as support for their contention that Iravedra bears no weight on this court's decision. Because the Iravedra decision predates Fresenius, the court will briefly review the findings of the Iravedra court within the framework laid out in Fresenius.

          **a.**      **Step One of the Fresenius Test**

In order to apply the first step of the Fresenius test, the First Circuit has identified a number of factors that the court must consider when answering the question of immunity. These factors include: (i) whether the enabling act of the PBA defines the entity as an "arm of the state;" (ii)

**Civil No. 08-2175 (GAG)**                               6

whether other state statutes characterize the PBA as an "arm of the state;"(iii) how the state courts have characterized the PBA; (iv) whether the entity's functions can be properly characterized as those carried out by the government; and (v) the level of control of the Commonwealth over the PBA's governance and decision-making. See Fresenius, 322 F.3d at 68-72.

### i.    The Enabling Act of the PBA

Although Defendants contend generally that fundamental amendments to the PBA's enabling act should persuade the court to ignore the Iravedra ruling, they have failed to identify what specific amendments should have this preclusive effect. See Pastrana-Torres, 460 F.3d at 126 ("The burden of proving that Eleventh Amendment immunity applies rests with [the entity]") (citing Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 99 (1st Cir. 2002). Furthermore, the court recognizes that, contrary to Defendants' assertions, the statutory language characterizing the PBA's inception has not been altered by these amendments. "The PBA's statute of incorporation [still] specifically provides that it is 'a body corporate and politic with corporate franchise.'" Iravedra 196 F. Supp. 2d at 108-09 (citing P.R. Laws Ann. tit. 22, Section 902). "Furthermore, Section 906 still provides that the PBA shall have 'perpetual existence as a corporation.'" Id. at 109. As these sections of the act have not been amended since the Iravedra decision, the court agrees that these same factors, which were recognized by the Iravedra court, weigh against the PBA's status as an "arm of the state."

### ii & iii.    The Commonwealth's Treatment of the PBA

Defendants have failed to identify any other state statutes or state court cases that demonstrate the Commonwealth's treatment of the PBA. As the burden is upon the PBA to demonstrate its immunity, the court will not consider these factors in conducting its analysis. See Fresenius, 322 F.3d at 70 (recognizing that it is entity's burden to demonstrate immunity under the Eleventh Amendment) (citations omitted).

### iv.    The PBA's Primary Functions

The enabling statute specifically provides that "the execution of the powers conferred by SectionSection 901-917 of this title, by the Authority, shall be deemed and understood to be an

**Civil No. 08-2175 (GAG)**                                                                 7

essential function of the Government of the Commonwealth of Puerto Rico." <u>Iravedra</u>, 196 F. Supp. 2d at 108. This language clearly demonstrates the legislative intent to define the PBA's exercise of functions as essential to the Commonwealth of Puerto Rico. Therefore this factor weighs strongly in favor of the PBA's status as an "arm of the state."

v.     **State's Level of Control Over the PBA**

The members of the governing board of the PBA are appointed by the Governor of the Commonwealth of Puerto Rico. P.R. Laws Ann. tit. 22, Section 904. Members of the board serve terms of five years and hold their office until their successor is appointed. <u>Id.</u> In analyzing this factor, the court in <u>Iravedra</u> held that, although the PBA's board members are appointed by the Governor of Puerto Rico, the Governor has no other direct voice in the decision-making process of the board. Further, the board members of the PBA are insulated from partisan or personal pressures as there is nothing in the statute providing for their early removal. See <u>Univ. of R.I. v. A.W. Chesterton Co.</u>, 2 F.3d 1200, 1208 (1st Cir. 1993) (finding factors in favor of autonomy *even* when government appointed board members could be removed for cause). As these portions of the statute have not changed, the court finds the <u>Iravedra</u> court's analysis to be persuasive on this point.

Section 906(3) of the statute states that the PBA has "complete control and supervision over each and every one of its properties and activities," including the power to determine the nature and need of each of its expenses and the manner of incurring, authorizing, and paying the same. P.R. Laws Ann. tit. 22, Section 906. This section also grants the PBA the right to "sue and be sued, complain and defend itself in all courts of justice and administrative bodies, as well as to participate in procedures for alternative methods of dispute resolution." <u>Id.</u> Section 906(4). Both of these portions indicate the intent to create an autonomous entity, not subject to governance by the state. See <u>Pastrana-Torres</u>, 460 F.3d at 127 (recognizing that the power to sue and be sued and enter into contracts suggests that an entity is autonomous from the state) (citing <u>Metcalf & Eddy, Inc. v. P.R. Aqueduct & Sewer Auth.</u>, 991 F.2d 935, 942 (1st Cir. 1993)).

As none of the factors discussed above are dispositive of the issue of the PBA's status as an "arm of the state" the court must then proceed to step two of the <u>Fresenius</u> test. See <u>Fresenius</u>, 322

**Civil No. 08-2175 (GAG)**                                8

F.3d at 72. Under step two, the court must focus primarily on whether money damages assessed against the PBA will be payable from the Commonwealth's treasury. Id. Because the PBA enabling act does not specifically address the Commonwealth's liability for debt resulting from judgments against the PBA, the court will look to the enabling act to see if there is implicit legislative intent to immunize the PBA from suit. Id.

### b.       Step Two of the Fresenius Test

In Fresenius, the court first looked to the source of the entity's funds to assess whether the majority of said funds were furnished by the state. 322 F.3d at 72. "'If the Commonwealth substantially funds [the entity], those funds would be the probable source to satisfy any judgment against [the entity],' and therefore the public fisc would be jeopardized by an adverse judgment." Pastrana-Torres, 460 F.3d at 128 (quoting Fresenius, 322 F.3d at 73). With respect to the PBA's sources of funds, the Commonwealth has clearly provided for the PBA to have independent sources of revenue. For example, Section 906 of the enabling act prescribes that the PBA shall "borrow money, make and issue bonds of the [PBA] for any of its corporate purposes and to secure payment of its bonds and of any and all other obligations by pledge on all or any of its properties, revenues and incomes." P.R. Laws Ann. tit. 22, Section 906(10). Moreover, among other acts, the PBA is authorized to make and issue bonds for the purpose of funding any of its outstanding obligations, accept or obtain contributions to fulfill its duties, and sell or dispose of property of any kind. Id. Section 906 (11)-(13). These independent sources of funds weigh against a finding that the Commonwealth will use treasury funds to pay the debts of the PBA. However, the Fresenius court declared that the crux of the "arm of the state" analysis is whether the state's treasury will be at risk if the entity is unable to to pay a judgment rendered against it. 322 F.3d at 65.

Previously, the Iravedra court concluded that, by granting the PBA the legal capacity to sue and be sued, the Commonwealth implicitly immunized itself from liability for any judgment rendered against the PBA. See Iravedra, 196 F. Supp. 2d at 111 (citing U.S. v. Sharon Steel Corp., 681 F. Supp. 1492, 1497 (D. Utah 1987)). However, in making this ruling, the Iravedra court did not assess the statutory language in Section 907a. According to Section 907a, the Commonwealth

**Civil No. 08-2175 (GAG)**                                9

acts as the guarantor of the payment of the principal and interest of bonds issued by the PBA.[2]  This court, in Data Research Corp. v. Rey Hernandez, ruled that this language was inconclusive without "evidence before [the court] to determine the actual degree of fiscal and operational autonomy that the PBA enjoys." 261 F. Supp. 2d 61, 70 (1st Cir. 2003), overruled on other grounds by Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 62 (1st Cir. 2004).  The court granted the parties a limited discovery period to obtain evidence as to that issue, stressing the fact that "the Court [could not] reach a definitive conclusion on the arm-of-the-state question without the benefit of a developed record." Id.  The court's order was issued in response to defendants' motion to dismiss. Contrary to the procedural posture of the court in Data Research, presently the court has before it two motions for summary judgment.  The period for discovery in this case has already lapsed.  (See Docket No. 25)  Accordingly, the court will address this question considering only the evidence which is already before the court.[3]

As previously noted, Section 907a explicitly requires the Commonwealth to cover any deficiency resulting from the PBA's failure to satisfy payment of the principal and interest on bonds issued by the PBA.[4]  As recognized in Data Research, the Fresenius court noted that statutory

---

[2] Defendants contend, that Section 907a was added by amendment in 2006. Said contention, is not supported by the annotations. While amendments were made to Section 907a in 2006, said amendments did not have this stated effect. See P.R. Laws Ann. tit. 22, Section 907a.

[3] Neither party provides evidence demonstrating the degree to which the Commonwealth is liable for debts owed by the PBA.

[4] The language of Section 907a contradicts the language in Section 906(16). Section 906(16) states in pertinent part that "neither . . . the Commonwealth of Puerto Rico, nor any of its political subdivisions [is] liable for the payment of the principal of or interest on any bonds issued by the authority." P.R. Laws Ann. tit. 22, Section 906(16). This language is in clear contrast to the language in Section 907a, which states in pertinent part:

> The Commonwealth of Puerto Rico hereby guarantees the payment of the principal

**Civil No. 08-2175 (GAG)**                               10

language declaring that the Commonwealth is responsible for an agency's debts suggests that it is an "arm of the state." See Data Research Corp., 261 F. Supp. 2d at 70 (citing Fresenius, 322 F.3d at 69). However, as the Data Research court concluded, this statutory language, without some evidence before the court to determine the actual degree of fiscal and operational autonomy, is insufficient to meet the entity's burden to demonstrate that money damages assessed against it will be paid from the state's treasury. Id. at 69-70. Because the PBA has failed to provide any such evidence, the court finds that it has failed to demonstrate its status as an "arm of the state" and therefore **DENIES** Defendants' motion to dismiss Plaintiff's claims based on Eleventh Amendment immunity.

### 2.      Declaratory and Injunctive Relief

Among Plaintiff's claims are prayers for both injunctive and declaratory relief. Plaintiff requests that the court declare that: (1) Defendants illegally harassed, discriminated and persecuted Plaintiff; (2) that the PBA's structural reorganization is illegal per state laws and regulations; and (3) that the policy of the PBA discriminates against members of the NPP. Plaintiff further prays that the court order (1) the immediate cease and desist of the assignment to Plaintiff of duties related to the areas of plumbing, sewers, and waste water treatment plants; (2) Plaintiff's reinstatement to the career position of Field Operations Supervisor; (3) that Plaintiff be appointed the career position of Field Operations Manager for the Aguadilla Region; (4) payment to Plaintiff of any back pay and

---

> and interest on outstanding bonds at any given time . . . . If at any time the revenues or income and any other monies of the Authority, pledged for the payment of the principal and interest on such bonds, are not sufficient for the payment of such principal and interest when they come due . . . the Secretary of the Treasury shall withdraw from any available funds in the Treasury of Puerto Rico, such sums as may be necessary to cover the deficiency in the amount required for the payment of such principal and interest . . . .

P.R. Laws Ann. tit. 22, Section 907a. Because the statute contradicts itself, under the rule of lex posterior derogate priori the court must apply the later-enacted provision at Section 907a. See Harding v. Dep't. of Veterans Affairs, 448 F.3d 1373, 1376 n.2 (Fed. Cir. 2006).

**Civil No. 08-2175 (GAG)**                    11

marginal benefits not received; and (5) the prohibition of direct or indirect future performance evaluations of Plaintiff by any of the defendants.

The U.S. Constitution limits the jurisdiction of the federal courts to actual cases or controversies. U.S. Const. Art. III, Section 2. As this requirement pertains to the Declaratory Judgment Act, 28 U.S.C. Section 2208, declaratory relief may be issued, only if there is a live case or controversy. United States v. Davis, 261 F.3d 1, 47 (1st Cir. 2001). This same case or controversy requirement applies equally to the court's ability to provide injunctive relief. See Gonzalez-Droz v. Gonzalez-Colon, 573 F.3d 75, 80 (1st Cir. 2009). To be entitled to injunctive relief a plaintiff must demonstrate "the likelihood of substantial and immediate irreparable injury." Steir v. Girl Scouts, 383 F.3d 7, 16 (citing O'Shea v. Littleton, 414 U.S. 488, 502 (1974). In circumstances where a once existing controversy has ended, "no justiciable case remains and the court must dismiss the [claim] as moot." Oakville Dev. Corp. v. FDIC, 986 F.2d 611, 613 (1st Cir. 1993). Similarly, a court may dismiss under the doctrine of ripeness if a case or controversy "has [not] matured sufficiently to warrant judicial intervention." Warth v. Seldin, 422 U.S. 490, 516 (1975).

Defendants assert that Plaintiff's claims for injunctive and declaratory relief fail to state a live case or controversy and therefore must be dismissed. The following facts are uncontested in this case: (1) Plaintiff no longer occupies the position of Technical Services Supervisor, and therefore, does not have duties related to the areas of plumbing, sewers, and waste water treatment plants; (2) Plaintiff is currently employed in a trust position as Regional Director of the PBA Mayaguez Region and does not currently occupy or intend to occupy a career position in the foreseeable future as his tenure as Regional Director has no determined end-date; (3) Plaintiff is no longer supervised by any of the individual defendants and therefore is no longer subject to evaluations by the same; and (4) Plaintiff has suffered no actual monetary damages as a result of his alleged past demotion.

While admitting these facts, Plaintiff contends that a live controversy could resurface in the event that he was forced to leave his current trust position and return to his career position. In his opposition to summary judgment, Plaintiff demonstrates the dubious nature of these claims when

**Civil No. 08-2175 (GAG)**                    12

he argues, "If plaintiff, for whatever reason, ceases to occupy the trust position . . . ." (See Docket No. 83 at 10.) Such tenuous circumstances do not satisfy the Article III case or controversy requirement. See City of L.A. v. Lyons, 461 U.S. 95, 104 (1983); see also Lincoln House, Inc. v. Dupre, 903 F.2d 845, 847 (1st. Cir. 1990) (quoting 13A Charles Alan Wright Section Austin R. Miller, Federal Practice and Procedure Section 3532.2 (1984) ("[t]he most important consideration in determining whether a claim is ripe for adjudication is the extent to which 'the claim involves uncertain and contingent events that may not occur as anticipated, or indeed may not occur at all.'")). Therefore, in light of these uncontested facts, the court finds that all of Plaintiff's requests for prospective injunctive relief are either moot or unripe for adjudication as they fail to present a live case or controversy. See Steir, 383 F.3d at 16 (citing Golden v. Zwickler, 394 U.S. 103, 109 (1969) ("It is not enough for a plaintiff to assert that [he] 'could be' subjected in the future to the effects of an unlawful policy or illegal conduct by a defendant – the prospect of harm must have an 'immediacy and reality.'")).

      Plaintiff's requests for declaratory relief also suffer from the same deficiency. Plaintiff asks this court to declare that the Defendants discriminated against him through an illegal structural reorganization as well as through policy decisions that discriminated against members of the NPP. However, even assuming that Plaintiff's averments are correct, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy. . . if unaccompanied by continuing present adverse effects." See id. (citing O'Shea, 414 U.S. at 48). As previously stated, Plaintiff is no longer supervised by his alleged harassers. (See Docket No. 63-17 at 2, 9-22.) Furthermore, in his deposition, Plaintiff states that he does not believe that the PBA is committing any acts of political discrimination at present. (See Docket No. 63-17 at 2, 5-8.) Finally, Plaintiff testifies that he is owed no marginal benefits as a result of the 2007 reorganization, and does not currently hold the position to which he was reclassified. (See Docket Nos. 63-17 at 2, 2-4; 63-12 at 2, 4-7.) Therefore, there are no "continuing present adverse effects" which a declaratory judgment from this court could remedy. Accordingly, all of Plaintiff's claims for declaratory relief have become moot. See Steir, 383 F.3d at 16-17 (affirming dismissal of claims for equitable relief for past acts of discrimination

**Civil No. 08-2175 (GAG)**                    13

when no live controversy remained).

### 3. Plaintiff's Request for Damages under Section 1983

Plaintiff also brings claims for monetary damages against the PBA and its supervising officers. As the court holds that the PBA has not sufficiently demonstrated its immunity under the Eleventh Amendment, both the PBA and its officers, in their official capacity, are subject to suit.

"[Section] 1983 creates no independent substantive rights, but rather provides a cause of action by which individuals may seek money damages for governmental violations of rights protected by federal law." Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 621 (1st Cir. 2000) (citing Albright v. Oliver, 510 U.S. 266, 271 (1994)). As such, Plaintiff's Section 1983 claims are grounded in alleged violations of his rights under the First, Fifth and Fourteenth Amendments to the U.S. Constitution.

### a. Due Process Claim

The Due Process Clause protects against deprivation of life, liberty, or property without the due process of law. U.S. Const. amend. XIV. This due process guarantee has both procedural and substantive aspects. See Parker v. Hurley, 514 F.3d 87, 101 (1st Cir. 2008). "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protections of liberty and property." Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972).

Defendants contend that, because Plaintiff was not fired but was reclassified in a position with the same supervisory duties and salary, he has failed to demonstrate the deprivation of a constitutionally recognized property interest. Plaintiff submits that although his salary was not altered by the reclassification, the salary scale of a Technical Services Supervisor is lower than that of his previous position. He further complains that, under his new title, he no longer supervised managerial staff and did not enjoy the duties required of the position.

Under the laws of Puerto Rico, career or tenured employees have property rights in their continued employment. See Gonzalez-De-Blasini v. Family Dep't, 377 F.3d 81, 86 (1st Cir. 2000). However, the district court as well as the First Circuit have specifically limited the scope of this

**Civil No. 08-2175 (GAG)**                    14

property interest to apply only to the right of continued employment and not to the functions performed. See Torres-Martinez v. P.R. Dep't. of Corr., 485 F.3d 19, 24-25 (1st Cir. 2007); Rosado de Velez v. Zayas, 328 F. Supp. 2d 202, 212 (D.P.R. 2004).

Plaintiff was reclassified to the position of Technical Services Supervisor when his previous position of Fields Operations Supervisor was eliminated. Assuming that all of Plaintiff's supported facts are true, the only differences between the two positions are the potential salary scale and the individuals and duties which were now under his supervision. (See Docket No. 84 ¶ 18.) Both of these grounds have previously been held insufficient to constitute a recognized property interest. See Rodriguez-Pinto v. Tirado Delgado, 798 F. Supp. 77, 84 (D.P.R. 1992), aff'd on this ground, 982 F.2d 34, 41 (1st Cir. 1993) (finding that an employee's potential for salary increase does not constitute a property right); see also Morales-Narvaez v. Rossello, 852 F. Supp. 104, 113 (D.P.R. 1994) (summarizing cases holding that a plaintiff is not deprived of a property interest by a change in duties or title). Therefore, the court finds that Plaintiff has failed to demonstrate that he was deprived of a legally cognizable property interest. Accordingly, the court **DISMISSES** Plaintiff's claim under the Due Process Clause.

### b.     First Amendment Political Discrimination Claim

Plaintiff claims that Defendants violated his First Amendment rights by placing into effect a reorganization plan that discriminated against him as a member of the NPP.

To prove a case of political discrimination, a plaintiff must make four showings: (1) the plaintiff and the defendant belong to opposing political affiliations; (2) the defendant has knowledge of the plaintiff's opposing political affiliation; (3) that a challenged employment action has occurred; and (4) sufficient evidence, whether direct or circumstantial, that the challenged employment action stemmed from politically based animus. Gonzalez-De-Blasini v. Family Dep't., 377 F.3d at 85. If the plaintiff proves his *prima facie* case, the burden shifts to the defendant to articulate a nondiscriminatory ground for the adverse employment action and establish, by a preponderance of the evidence, that the same action would have been taken regardless of the plaintiff's political beliefs ("Mt. Healthy Defense"). Mt. Healthy City, 429 U.S. at 287. In response, "the plaintiff may

**Civil No. 08-2175 (GAG)**                                15

discredit the proffered nondiscriminatory reason, either circumstantially or directly, by adducing evidence that discrimination was more likely than not a motivating factor." Padilla-Garcia v. Guillermo Rodriguez, 212 F.3d 69, 77 (1st Cir. 2000) (internal citations omitted). In the end, "[s]ummary judgment is warranted 'only if defendants' evidentiary proffer compelled the finding that political discrimination did not constitute a 'but for' cause for the adverse employment action.'" Mendez-Aponte v. Puerto Rico, 656 F. Supp. 2d 277, 285 (D.P.R. 2009) (quoting Jirau-Bernal v. Agrait, 37 F.3d 1, 4 (1st Cir. 1994)).

In their motion for summary judgment, Defendants contend that Plaintiff has failed to demonstrate that his reclassification was motivated by political animus. In providing a politically-neutral justification for this employment action, Defendants argue that known members of the PDP, in the same position as Plaintiff, were also affected by the reorganization, and thus, Plaintiff's reclassification could not have been the result of political discrimination. In support of the same, Defendants offer the deposition testimony of Samuel Valentin, in which he states that Jose Vargas, a known member of the PDP,[5] was demoted as a result of the reorganization. (See Docket No. 63-15 at 3, 12-16.) Defendants bolster this evidence with the testimony of Javier Soto-Cardona, in which he states that a number of NPP sympathizers were promoted as a result of the reorganization, while a number of PDP sympathizers, including Jose Vargas, were demoted. (See Docket No. 74 at 4-5.)

Plaintiff attempts to rebut these factual assertions, by arguing that Samuel Valentin is employed as a building maintenance supervisor, and therefore, does not have the personal knowledge to testify to personnel matters such as whether or not an employee was demoted as a result of the 2007 reorganization. (See Docket No. 84 at ¶ 20.) Plaintiff also highlights the deposition testimony of Auxillary Regional Director Gerardo Garcia to rebut Defendants' assertion. In his deposition, Garcia testified that as a result of the reorganization, Jose Vargas was transferred from Field Operations Supervisor to Supervisor. (See Docket No. 96-3 at 5, 14-20.) Garcia also

---

[5] Jose Vargas' and Adrian Acevedo's known affiliation to the PDP is uncontested by Plaintiff. (See Docket No. 84 at ¶ 19.)

**Civil No. 08-2175 (GAG)**                    16

testified that the position of Field Operations Supervisor is a higher ranked position than the Supervisor position. (See Docket No. 96-3 at 5, 5-12). In spite of this testimony, Garcia asserts that he does not believe Vargas's reclassification was a demotion. He instead claims that Vargas was placed in the position of Supervisor because he was not qualified for any of the other available positions following the elimination of his former position.

       The court finds this evidence insufficient to rebut Defendants' Mt. Healthy defense. For one, Plaintiff submits no evidence to support his averment that Valentin is not competent to testify to his personal knowledge of personnel decisions. Furthermore, while Garcia contends that Vargas was not "demoted," he was still placed in an inferior position upon the termination of his prior position. Therefore, the 2007 reorganization equally affected Vargas's employment status. See Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1220 (1st Cir. 1989), abrogated on other grounds by Rutan v. Republican Party of Ill., 497 U.S. 62, (1990) (recognizing as a valid Mt. Healthy defense the fact that "most employees within the relevant unit, regardless of political affiliation, experienced a reduction in duties as part of a . . . reallocation of responsibilities"). Contra Padilla-Garcia, 212 F.3d at 78 (reversing summary judgment based on Mt. Healthy defense where record did not show that anyone besides plaintiff was terminated as a result of the restructuring). Finally, Plaintiff's proposed expert testimony merely speaks to the PBA's failure to comply with its own organizational rules, but does not assert that such actions are, in any way, indicative of acts of political discrimination. (See Docket No. 98-4.) Similarly, Plaintiff's evidence of the PBA's failure to comply with its own probationary structuring and hiring procedures does not sufficiently demonstrate that Plaintiff's reclassification was the result of political discrimination. See Padilla-Garcia, 212 F.3d at 74 (holding that a showing of political animus "requires more than merely 'juxtaposing a protected characteristic-someone else's politics – with the fact that plaintiff was treated unfairly.'") (citation omitted). Instead, the evidence predominantly demonstrates that Plaintiff's reclassification occurred as a result of an entity-wide 2007 reorganization, which similarly affected at least one known member of the PDP, who, at the time, held the same position as Plaintiff. Such evidence clearly demonstrates that the PBA would have taken the same action, regardless of

**Civil No. 08-2175 (GAG)**                                                        17

Plaintiff's political affiliation. Accordingly, the court **GRANTS** Defendant's motion for summary judgment and **DISMISSES** Plaintiff's Section 1983 claims for alleged violations of his First Amendment rights against the remaining Defendants in their official capacities.

      **B.**      **Summary Judgment Motion for Claims Against Defendants in Their Individual Capacities (Docket No. 64)**

Plaintiff also brings Section 1983 claims against Defendants in their individual capacities, arising out of alleged violations of his First, Fifth, and Fourteenth Amendment rights. However, for the reasons previously stated by the court, Plaintiff has failed to satisfy his burden with regard to each of his Section 1983 claims against the Defendants in his/her official capacity. Therefore, the court **GRANTS** Defendants' motion for summary judgment (Docket No. 64) and **DISMISSES** these same claims against the Defendants in their individual capacities.

      **C.**      **State Law Claims**

"As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims." Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995). In cases where the federal claims are dismissed, "the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity– will point toward declining to exercise jurisdiction over the remaining state-law claims." Id. The use of supplemental jurisdiction in these circumstances is completely discretionary, and is determined on a case-by-case basis. Id.

As all of the federal claims by Plaintiff have been dismissed, the court, in its discretion, **DISMISSES**, without prejudice, all state law claims brought by Plaintiff.

**IV.**      **Conclusion**

For the foregoing reasons, the court **GRANTS** in part and **DENIES** in part Defendants' motion for summary judgment at Docket No. 62 and **GRANTS** Defendants' motion at Docket No. 64. Although the court denies Defendants motion for summary judgment on the issue of Eleventh Amendment immunity, Plaintiff's Section 1983 and due process claims are unable to survive

**Civil No. 08-2175 (GAG)**                    18

summary judgment on the merits. Therefore, although Defendants' first summary judgment motion (Docket No. 62) is denied in part, all of Plaintiff's claims are dismissed on the other grounds adduced in Defendants' motions for summary judgment.

**SO ORDERED**

In San Juan, Puerto Rico this 15th day of October, 2010.

*S/Gustavo A. Gelpí*

GUSTAVO A. GELPÍ

United States District Judge